# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

TOMMY RADFORD                                                                                       PLAINTIFF
ADC #89900

v.                                          5:17cv00116-BRW-JJV

VIVIAN BROOKS, LPN,
Tucker Maximum Security Unit; *et al.*                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.    INTRODUCTION

Tommy Radford ("Plaintiff"), an inmate at the Maximum Security Unit of the Arkansas Department of Correction ("ADC"), filed this action *pro se* and pursuant to 42 U.S.C. § 1983. (Doc. Nos. 2, 27.) He alleges Defendants have been deliberately indifferent to his serious medical need, specifically by intentionally withholding his prescribed blood pressure medication and monitoring.[1] (Doc. No. 27 at 7-8.) Plaintiff seeks compensatory and punitive damages. (Doc. Nos. 2 at 9-10, 27 at 10.)

---

[1] Additional claims stated in Plaintiff's Amended Complaint – an excessive force claim and a claim for failure to treat sores in his mouth caused by contaminated water – were previously dismissed without prejudice. (Doc. Nos. 30, 41.)

The remaining Defendants[2] are Vivian Brooks, Erica Johnson, Cyndella Wooten, Shana Whitmore, Sail,[3] and Mosely.[4] They have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. No. 62.) Plaintiff has not responded, and the time for doing so has passed. After careful review, and for the following reasons, I find summary judgment is appropriate and Plaintiff's claims should be DISMISSED.

## II.  FACTS

According to Plaintiff's Amended Complaint, Defendants, who are all nurses at the Maximum Security Unit, denied him prescribed blood pressure medication and monitoring beginning in October 2016 and continuing through January 2017. (Doc. No. 27 at 7-8.) Plaintiff's Amended Complaint does not specify exactly how many doses and blood pressure checks he was denied, or when these denials occurred, but his claims have previously been limited to six exhausted grievances filed during the relevant time period. (Doc. Nos. 42, 47.) They are as follows:

1.  In MX-16-02333, submitted October 6, 2016, Plaintiff asserted he was not afforded a mandatory blood pressure check on October 3, 2016. (Doc. No. 35-2 at 3.) In his deposition, Plaintiff stated Defendant Saih was responsible for this missed blood pressure check. (Doc. No.

---

[2] Plaintiff's claims against Defendant Rory Griffin were dismissed without prejudice on screening. (Doc. Nos. 5, 8.) His claims against Defendants Cynthia Gaines, Jared Byers, Janell Nunn, Montgomery, Danny Burl, Shaun Young, and Jack were dismissed without prejudice on screening of the Amended Complaint. (Doc. Nos. 30, 41.) Finally, his claims against Defendant Charlotte Sanders were dismissed without prejudice for failure to exhaust administrative remedies. (Doc. Nos. 42, 47.)

[3] This Defendant's name is Jasmine Saih. (Doc. No. 44 at 1.) The Clerk is directed to amend the docket to reflect her full and correct name.

[4] This Defendant's name is Leona Mosby. (Doc. No. 44 at 1.) The Clerk is directed to amend the docket to reflect her full and correct name.

63-2 at 47-49.) But Plaintiff's medical records show he did in fact receive a blood pressure check on October 3, 2016. (Doc. No. 63-1 at 4.)

2. In MX-16-02335, submitted October 11, 2016, Plaintiff stated he was being "steadfastly denied" blood pressure checks, which he was supposed to be receiving each Tuesday and Thursday. (Doc. No. 35-2 at 10.) He implicated all nurses in this grievance. (*Id*.) In his deposition, Plaintiff stated Defendant Johnson had failed to enter his prescription for twice weekly blood pressure checks into the computer, which caused him to miss "several" checks. (Doc. No. 63-2 at 51.)

3. In MX-16-02398, submitted October 18, 2016, Plaintiff stated he had been prescribed a stronger blood pressure medication on October 13, 2016.[5] (Doc. No. 35-2 at 17.) He asserted the nurses, including Defendants Johnson, Wooten, and Whitmore, disregarded the doctor's order to monitor the new medication. (*Id*.)

4. In MX-16-02478, submitted November 5, 2016, Plaintiff asserted Defendant Johnson continued to allow Defendant Wooten and other nurses to deprive him of mandatory blood pressure checks twice weekly. (*Id*. at 21.) Plaintiff referenced the week of November 1, 2016, specifically. (*Id*.) In his deposition, Plaintiff said he missed blood pressure checks on November 1, 2016, and November 3, 2016. (Doc. No. 63-2 at 55.)

5. In MX-16-02579, submitted November 17, 2016, Plaintiff asserted Defendant Johnson continued to deprive him of "copy of medical restriction," which apparently renewed the

---

[5] Plaintiff's medical records show he did have a chronic care visit on October 13, 2016. (Doc. No. 63-1 at 7-12.) A prescription for "Coreg/Lipitor" was added to his existing prescriptions. (*Id*. at 9.)

4

doctor's order for twice weekly blood pressure checks.[6] (Doc. No. 35-2 at 24.) In his deposition, Plaintiff said he missed approximately three to four blood pressure checks in this time period. (Doc. No. 63-2 at 56.)

6. Finally, in MX-17-00050, submitted January 7, 2017, Plaintiff alleged Defendant Brooks had denied him his medications earlier that morning. (Doc. No. 35-2 at 28.) Plaintiff stated he was supposed to have received blood pressure and pain medications. (*Id*.) Plaintiff alleged Defendant Brooks laughed and told him she hoped he would die. (*Id*.) In his deposition, Plaintiff stated Defendant Brooks was the only Defendant involved in this incident. (Doc. No. 63-2 at 60.) He also stated he was supposed to have received a dose of lisinopril twice daily but only received it once that day. (*Id*. at 26.)

Plaintiff's medical records contain only one notation of a missed blood pressure check. On December 2, 2016, his blood pressure was not checked because there was no available escort for the nurses. (Doc. No. 63-1 at 40.) Plaintiff had another chronic care visit on December 13, 2016, which resulted in another change to his medications. (*Id*. at 43-45.) He was told to follow up in thirty days for a blood pressure recheck. (*Id*.) On December 22, 2016, Plaintiff underwent a "pre-lockup" evaluation, which included a blood pressure check. (*Id*. at 49.) The next day, December 23, 2016, when his cell was checked upon being transferred to isolation, security found medications in Plaintiff's cell. (*Id*.) Specifically, 56 atorvastatin pills, 109 lisinopril pills, and 28 nifedipine pills were found. (*Id*.)

---

[6] Plaintiff's medical records show he had a chronic care visit on November 17, 2016, and the authorization for blood pressure checks was renewed on that date. (Doc. No. 63-1 at 29-34.) It was set to expire on December 17, 2016. (*Id*. at 34.)

5

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### IV. ANALYSIS

#### A. Exhaustion of Administrative Remedies

Defendants Saih and Mosby were named in Plaintiff's Amended Complaint, and they were served after my prior recommendation to grant the other Defendants' Motion for Partial Summary

Judgment on exhaustion. (Doc. Nos. 42, 45-46.) Therefore, they were not parties to that Motion, and the recommendation did not apply to them. (Doc. No. 42 at 10.) Defendants Saih and Mosby now contend Plaintiff's claims against them are likewise limited to the six exhausted grievances, and they adopt their co-Defendants' Motion for Partial Summary Judgment on exhaustion. (Doc. No. 62 at 3.) Because the same time period is relevant and because Plaintiff has previously been found to have exhausted only six grievances prior to filing this action, the claims against Defendants Saih and Mosby should be limited accordingly. Any claims against them pertaining to matters outside the scope of those grievances should be dismissed without prejudice.

### B. Official Capacity Claims

Plaintiff has sued Defendants in both their official and personal capacities. (Doc. No. 27 at 2.) He seeks only monetary damages. (Doc. Nos. 2 at 9-10, 27 at 10.) Plaintiff's claims against Defendants in their official capacities are barred pursuant to the doctrine of sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity). Accordingly, I recommend Plaintiff's official capacity claims against Defendants be dismissed.

### C. Personal Capacity Claims

Defendants contend they are entitled to summary dismissal of Plaintiff's claims against them in their personal capacities because he did not suffer an Eighth Amendment violation. (Doc. No. 64 at 7.) The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). A prisoner advancing

an Eighth Amendment claim based on medical care must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. *Id.* at 297. Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A claim that prison officials were deliberately indifferent to a prisoner's serious medical needs has both objective and subjective components. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A plaintiff must demonstrate (1) that he suffered from objectively serious medical needs, and (2) that prison officials actually knew of but deliberately disregarded those needs. *Id*. Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Id*. at 104-05. However, an inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Id*. at 105.

As set out above, Plaintiff's exhausted claims include only one for a missed blood pressure medication. Specifically, he contends he was denied a dose of lisinopril by Defendant Brooks on January 7, 2017. (Doc. No. 63-2 at 26, 60.) According to the Affidavit of Jeffrey Stieve, M.D., Regional Medical Director for Correct Care Solutions, Plaintiff suffered no injury as a result of missing this dose. (Doc. No. 63-3 at 2.) Plaintiff himself admitted he had not suffered a heart attack, stroke, or any other major health consequence. (Doc. No. 63-2 at 67.) Additionally, this missed dose of lisinopril occurred just two weeks after Plaintiff was found to be in possession of 109 lisinopril pills, among other medications he had not taken. (Doc. No. 63-3 at 2.) As Plaintiff himself was clearly noncompliant with his treatment plan, a single missed dose of one medication can hardly be described as an unnecessary and wanton infliction of pain.

Plaintiff's claims for missed blood pressure checks are broader. At least some of them appear to have been the result of a charting error; as Plaintiff explained in his deposition, Defendant Johnson failed to enter his prescription for twice weekly blood pressure checks into the computer, which caused him to miss "several" checks. (Doc. No. 63-2 at 51.) But even assuming Plaintiff missed some blood pressure checks because the nurses chose not to perform them, Dr. Stieve's Affidavit provides an explanation:

> Mr. Radford's medical records indicate that on December 23, 2016, Mr. Radford was found in possession of 56 atorvastatin pills, 109 lisinopril pills and 28 nifedipine pills. This indicates to me that he was non-complaint with the medication plan. Because Mr. Radford refused to appropriately take his blood pressure medication, the ordered blood pressure checks would not have been clinically useful to Mr. Radford's treating providers. The purpose of the blood pressure checks was to monitor Mr. Radford's blood pressure, while he was medicated, to determine if adjustments were indicated. This process was undermined by patient noncompliance and rendered the blood pressure checks that were recorded less helpful.

(Doc. No. 63-3 at 2.) Plaintiff has not rebutted this evidence. Defendants cannot be said to have deliberately disregarded Plaintiff's serious medical need by choosing not to perform blood pressure checks that would have been rendered meaningless due to his noncompliance. "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Dulany*, 132 F.3d at 1239 (quoting *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Id.* Defendants were free to exercise their independent medical judgment and forego blood pressure checks when the results would have been unhelpful.

9

Finally, Dr. Stieve concludes the treatment provided to Plaintiff for his blood pressure issues "was appropriate and satisfactory for Radford's complaints during the relevant period of time." (Doc. No. 63-3 at 2.) Plaintiff's medical records show his blood pressure was closely monitored. He was regularly seen in chronic care, where his blood pressure medications were frequently adjusted. (Doc. No. 63-1 at 7, 29, 43.) In addition, he was housed in segregation at all relevant times, and his medical records include daily or twice-daily encounter notes showing he was checked on by a nurse during "segregation rounds." (*Id*. at 2-54.) Almost all entries note Plaintiff "voiced no H/S complaints during segregation rounds." (*Id*.) "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Dulany*, 132 F.3d at 1240.

In sum, Plaintiff has not shown Defendants were deliberately indifferent to his serious medical need. His personal capacity claims against them should be dismissed.

## V.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. The Clerk is directed to amend the docket to reflect the full and correct names of Jasmine Saih and Leona Mosby.

2. Any claims against Defendants Saih and Mosby that are outside the scope of the six exhausted grievances be DISMISSED WITHOUT PREJUDICE.

3. Defendants' Motion for Summary Judgment (Doc. No. 62) be GRANTED.

4. Plaintiff's remaining claims against Defendants Brooks, Johnson, Wooten, Whitmore, Saih, and Mosby be DISMISSED WITH PREJUDICE.

5. Plaintiff's cause of action (Doc. Nos. 2, 27) be DISMISSED.

6.     The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

DATED this 17th day of January, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE